IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KEVIN CLEMENTS,

    Plaintiff,

v.                                                  CASE NO. 5:17cv213-RH/GRJ

NICHOLAS FARHOOD and
TOMMY FORD, in his official capacity
as Sheriff of Bay County, Florida,

    Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

This case presents a question of Florida law: does the homestead exemption apply when the owner of a vacant lot begins construction of a house but is living elsewhere? The answer is no. This order grants summary judgment for a creditor seeking to enforce a lien against the property.

I

The plaintiff Kevin Clements obtained a judgment against the defendant Nicholas Farhood in Texas. Mr. Clements properly recorded the judgment in Bay County, Florida. At the time of the recording, Mr. Farhood owned a lot in Bay County. A foundation had been poured, and construction of a house was

proceeding. Mr. Farhood lived in an apartment two counties away but planned to move into the house when construction was complete.

After the house was completed and Mr. Farhood moved in, Mr. Clements applied to the Sheriff of Bay County to levy on the property. The Sheriff scheduled a public sale, but Mr. Farhood sent the Sheriff a declaration of homestead. The Sheriff stood down pending a judicial determination of whether the property is indeed homestead. This was proper. *See Grant v. Credithrift, Inc.*, 402 So. 2d 486 (Fla. 1st DCA 1981).

Mr. Clements filed this action under Florida Statutes § 222.10, which provides for an action by a creditor to determine the validity of a debtor's claim that property is exempt from execution, including on the ground of homestead. The case is within the court's diversity jurisdiction.

Mr. Clements has moved for summary judgment. As allowed by Federal Rule of Civil Procedure 56, Mr. Clements filed the motion early in the case. Mr. Farhood objected, but the discovery period now has ended, and Mr. Farhood has not attempted to submit additional evidence or supplement his response. The motion has been fully briefed and is ripe for a decision.

II

On a summary-judgment motion, disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the

nonmoving party. The moving party must show that, when the facts are so viewed, the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary-judgment motion cannot be used to resolve in the moving party's favor a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

III

Under Florida law, which governs this dispute, a judgment becomes a lien against real property in a county on the date when the judgment is properly recorded in that county. *See* Fla. Stat. § 55.10. But under Florida Constitution article X, section 4, a lien does not attach to homestead property. Mr. Clements has a lien on the property at issue unless the property was homestead on February 29, 2016, the date on which Mr. Clements properly recorded the judgment in Bay County. *See Kirkland v. Kirkland*, 253 So. 2d 728, 730 (Fla. 3d DCA 1971) ("In Florida, the rule has been established that homestead property is subject to levy under judgments recorded prior to the time such property became the homestead of the judgment debtor."). Both sides agree that this is a correct statement of the governing law.

The Florida Constitution limits the acreage that may be claimed as homestead—half an acre in a municipality and 160 acres elsewhere—but does not otherwise define homestead. The Florida Supreme Court has said this: "[T]he

Case No. 5:17cv213-RH/GRJ

homestead intended by our Constitution to be exempt is the place of *actual residence* of the party and his family . . . . The character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the *fact of residence*." *Hillsborough Inv. Co. v. Wilcox*, 152 Fla. 889, 894-95, 13 So. 2d 448, 451-52 (1943) (emphasis added). The court sustained the homestead claim in *Wilcox* because the debtor and her family were actually living there at the relevant times. *See also Anderson Mill & Lumber Co. v. Clements*, 101 Fla. 523, 531, 134 So. 588, 592 (Fla. 1931) ("Actual residence is an essential quality to support a homestead . . . ."); *Dep't of Revenue v. Pelsey*, 779 So. 2d 629, 632 (Fla. 1st DCA 2001) (Webster, J.) (citing *Drucker v. Rosenstein*, 19 Fla. 191, 198 (1882)) ("[A]ctual occupancy is essential to a homestead claim. Mere intent to make the property one's homestead in the future is insufficient to entitle one to the exemption.").

Here the critical date is February 29, 2016. At that date Mr. Farhood had begun construction on a house but did not reside there. The parties disagree on whether, at that date, Mr. Farhood intended to live there in the future, but on Mr. Clements's summary-judgment motion, this dispute must be resolved in Mr. Farhood's favor. So for summary-judgment purposes, the facts must be viewed this way: when the judgment was recorded, Mr. Farhood had started but not finished

construction of a house on the lot, which he intended to occupy permanently once the house was finished.

Because Mr. Farhood was not living there when Mr. Clements recorded the judgment—in the words of *Wilcox*, it was not his "actual residence"—the property was not homestead. Mr. Clements has a valid lien.

IV

Four considerations do not change this conclusion.

A

First, Mr. Farhood has presented evidence that prior to February 29, 2016, he spent three noncontiguous nights on the lot, accompanied by his partner and her children. Construction of a house was not yet underway. The record does not indicate where they slept—perhaps in a tent or under the stars. Mr. Farhood makes no claim that he was living there or that he intended to ever live there that way—in a tent or under the stars. When he spent the night, his intent was, at most, to build a house on the lot and live there when it was completed.

Indeed, as of February 29, 2016, Mr. Farhood maintained his residence in Okaloosa County—two counties away. Not surprisingly, Mr. Farhood had not claimed homestead exemption for tax purposes on the Bay County property at that time. It was not homestead.

B

Second, old Florida cases have said that manifest intention to reside on property immediately, without current residence, could be sufficient to establish homestead. Nearly 100 years ago, the Florida Supreme Court said:

> Where it is clearly the manifest intention of the owner to occupy the premises *immediately* as a home, and this intention is evidenced by specific acts and doings that are not compatible with a different intention, and there is nothing done by the claimant showing a different intention, or that is inconsistent with the asserted intention to make the place his homestead, the homestead character will attach.

*Semple v. Semple*, 82 Fla. 138, 142, 89 So. 638, 639 (1921) (emphasis added). The case is still cited from time to time, but never for the proposition that a lot without a livable residence can be homestead if only the owner intends to build a house and live there at some point in the future. *E.g.*, *In re Geiger*, 569 B.R. 846 (Bankr. M.D. Fla. 2016) (citing *Semple* and denying the homestead exemption for a lot without a habitable residence). Quite the contrary. The *Semple* passage refers to occupying "premises"—a term that connotes an existing structure—and requires a "manifest intention" to occupy the premises "immediately"—not after construction of a house is completed. Not surprisingly, the court rejected the homestead claim at issue there.

Similarly, in *First National Bank of Chipley v. Peel*, 107 Fla. 413, 145 So. 177 (Fla. 1932), the court rejected the homestead claim of a person who did not

actually reside on one of the properties at issue. As part of its discussion of general homestead principles, the court repeated the *Semple* passage, again with its requirement of a "manifest" intention to occupy the property "immediately." *Id.*, 107 Fla. at 417, 145 So. at 179.

Modern courts continue to cite *Semple*, but not for the proposition that unoccupied property becomes homestead merely because the owner intends to occupy it at some point in the future. In *Wechsler v. Carrington*, 214 F. Supp. 2d 1348 (S.D. Fla. 2002) (Gold, J.), for example, the court rejected a homestead exemption claim by a condominium owner who had placed furniture in the unit, intended to move there within a few months, but was actually living in a different, leased apartment. The court said: "The mere intent to make the property one's homestead in the future is legally insufficient to entitle a person to constitutional homestead exemption." *Id*. at 1351.

In asserting the contrary, the owner in *Wechsler* relied on *Semple*, but the court said that, even under *Semple*, there must be an intent to reside on the property *immediately*. *Id*. at 1352. If placing furniture in a unit that is already in existence, intending to move there within months, is not sufficient under *Semple*, then intending to move into a house still in the early stages of construction also is not sufficient.

Case No. 5:17cv213-RH/GRJ

Mr. Farhood has cited no Florida authority, and I am aware of none, recognizing a homestead-exemption claim in circumstances like these. In a state that for decades has had a growing and mobile population and that has gone through repeated periods of boom and bust, there have surely been many thousands of individuals who, if allowed to do it, would have claimed homestead for property under construction or into which they planned to move at a future point. That no court has upheld such a claim further supports the view that actual residence is essential to a claim of homestead, just as *Wilcox*, *Anderson Mill*, and *Pelsey* explicitly state.

C

Third, Mr. Farhood asserts that the requirement for actual residence did not survive the 1968 revision of the Florida Constitution. That is incorrect. *See, e.g.*, *Avila S. Condo. Ass'n v. Kappa Corp.*, 347 So. 2d 599, 605 (1977) (holding that condominium units were not homestead when a declaration of condominium was recorded and that the liens created by the declaration thus did not interfere with homestead rights: "[A] debtor must establish the homestead character of his property as of the time the lien attaches."); *Dep't of Revenue v. Pelsey*, 779 So. 2d 629, 632 (Fla. 1st DCA 2001) ("[A]ctual occupancy is essential to a homestead claim.").

## D

Finally, Mr. Farhood asserts in passing, in his response to the summary-judgment motion, that Mr. Clements's claim is barred by laches. But laches is an affirmative defense that must be pleaded in an answer. *See* Fed. R. Civ. P. 8(c)(1). Mr. Farhood's answer does not assert laches. He has not moved to amend, and he has not submitted evidence of laches.

## V

For these reasons,

IT IS ORDERED:

1. Mr. Clements's summary-judgment motion, ECF No. 11, is granted.

2. It is declared that the plaintiff Kevin Clements holds a valid judgment lien on the property owned by the defendant Nicholas Farhood that is generally known as 6330 Turkey Cove Lane, Panama City Beach, Florida 32413, and that is more specifically described as Lot 85, Rivercamps on Crooked Creek Unit 3, according to the plat thereof, recorded in Plat Book 20, Pages 79-87, of the Public Records of Bay County, Florida. The property is not covered by the homestead exemption.

3. The clerk must enter judgment and close the file.

SO ORDERED on February 12, 2018.

s/Robert L. Hinkle<br>United States District Judge